UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| RHONDA ESSAK,<br><br>    Plaintiff,<br><br>v.<br><br>JOSHUA SOSNOWSKI et al.,<br><br>    Defendants. | Case No. 25-11470<br>Honorable Laurie J. Michelson |

**OPINION AND ORDER GRANTING APPLICATION TO PROCEED WITHOUT PREPAYING COSTS [5] AND DISMISSING COMPLAINT [1]**

This *pro se* complaint, brought against over 30 defendants and containing numerous constitutional, state, and criminal law claims—including, "due process violations," "defamation," "breach of fiduciary and ethical obligations," "witness tampering [,] and perjury conspiracy," "civil RICO," and "racketeering"— began with a dispute over a hot tub. (*See, e.g.*, ECF No. 1, PageID.10, 14, 16, 44, 56.)

While Essak's many pleadings are hard to follow, the various documents she has filed (ECF Nos. 1, 6, 7, 8, 12, 13 15, 17, 20) seem to present the following series of events: In July 2024, Essak filed a claim against her ex-boyfriend, Joshua Sosnowski, in Oakland County Circuit Court, following the dissolution of their romantic relationship and the emergence of a dispute over a hot tub Sosnowski purchased and installed at Essak's home. (ECF No. 13, PageID.200–201.) Sosnowski counter-sued Essak seeking, among other things, an order requiring that she return the hot tub. (*Id.*) In January 2025, the state court entered default judgment against

1

Essak and ordered her to comply with Sosnowski's efforts to retrieve the hot tub. (*See* ECF No. 13-1, PageID.283; *see also* ECF No. 7, PageID.96–97.) She failed to do so (*see* ECF No. 13-1 at PageID.284) and on April 3, 2025, was held in criminal contempt (*see id.* at PageID.280; *see also* ECF No. 8, PageID.102.)

Just over a month later, on May 16, 2025, Essak filed the instant case. (ECF No. 1.) In a lengthy complaint, and various emergency motions filed thereafter (ECF Nos. 6, 15, 17), Essak alleges "coordination among officials and private actors" (ECF No. 1, PageID.24) and a "conspiracy" to harm her "through the corruption of judicial processes, weaponization of state authority, and systematic denial of fundamental rights" (ECF No. 12, PageID.135.) Essak's pleadings describe a complex web of alleged wrongs, spanning numerous seemingly unrelated incidents, including divorce and custody proceedings with her ex-husband, various contract and tort claims arising from a failed construction project with Sosnowski, and, of course, the dispute over Sosnowski's hot tub.

Along with her complaint, Essak filed an application to proceed without prepayment of fees or costs. (ECF No. 5.) For the reasons below, the Court grants Essak's application to proceed without prepaying fees and summarily dismisses her complaint pursuant to 28 U.S.C. § 1915(e)(2)(B).

## I.

The Court first considers Essak's application to proceed without prepayment of fees or costs. (ECF No. 5.) Under 28 U.S.C. § 1915(a)(1), the Court may authorize commencement of an action without prepayment of fees and costs if the plaintiff

demonstrates that she cannot pay such fees. Essak states she is a single mother to three daughters and is currently recovering from "severe injuries sustained in a hit-and-run car accident" (ECF No. 1, PageID.9.) She is unemployed and relies on public benefits and "child support and alimony" to support herself and her children. (ECF No. 5, PageID.67.) So the Court finds that Essak is entitled to proceed *in forma pauperis* and grants her application (ECF No. 5). *See* 28 U.S.C. § 1915(a)(1).

## II.

When the Court grants an application under 28 U.S.C. § 1915, it has an additional responsibility: screen the complaint and decide whether it "is frivolous or malicious," "fails to state a claim on which relief may be granted," or "seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B); *see also McGore v. Wrigglesworth*, 114 F.3d 601, 608 (6th Cir. 1997) (holding that a "fee assessment" and the required "screening process" may occur "in the same opinion or order") *overruled on other grounds by*, *LaFountain v. Harry*, 716 F.3d 944 (6th Cir. 2022). Although a *pro se* litigant is entitled to a liberal construction of her pleadings and filings, *see Cassaday v. Verizon Media Inc.*, No. 25-1237, 2025 U.S. App. LEXIS 16682, at *4 (6th Cir. July 8, 2025) (citing *Martin v. Overton*, 391 F.3d 719, 712 (6th Cir. 2004)), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the dismissal standard for screening under § 1951(e)(2)(B)(ii) is the same as is used for motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6)). And a complaint that brings claims against

3

defendants who are "clearly immune from suit" fails to state a plausible claim for relief. *See Neitzke v. Williams*, 490 U.S. 319, 327–28 (1989).

## A.

As an initial matter, this Court must determine which complaint is operative here—Essak's initial complaint (ECF No. 1) or her amended complaint filed on August 6, 2025 (ECF No. 12).

A properly filed amended complaint supersedes an original complaint. *See Parry v. Mohawk Motors of Mich., Inc.*, 236 F.3d 299, 306 (6th Cir. 2000). However, in line with the general rule that *pro se* pleadings are liberally construed (*Cassaday*, 2025 U.S. App. LEXIS 16682, at *4 (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)), the Sixth Circuit has "recognized exceptions to this rule where a party evinces an intent for the amended pleading to supplement rather than supersede the original pleading." *See Braden v. United* States, 817 F.3d 926, 930 (6th Cir. 2016).

Many courts in this Circuit have construed a *pro se p*laintiff's amended complaint as a mere "supplement" to the original filing where circumstances suggest the plaintiff did not intend to abandon their initial complaint. *See, e.g.*, *Ayers v. City of Memphis*, 21-02383, 2024 U.S. Dist. LEXIS 170263, at *6 n.4 (W.D. Tenn. July 30, 2024) (collecting cases); *English v. II Enters*, 19-12463, 2020 WL 32550 at *6 (E.D. Mich. Jan. 2, 2020) ("[I]t is clear that Plaintiff intended only to clarify the party whom he intended to sue and not to completely supersede his prior filing. In line with [other courts] and with the Sixth Circuit's mandate to 'liberally construe' *pro se* complaints, the Court finds that Plaintiff's amended complaint incorporates by reference his

4

initial complaint" (citation omitted).); *see also Brent v. Hyundai Cap. Am.*, No. 14-2600, 2014 U.S. Dist. LEXIS 176197, at *1 n.1 (W.D. Tenn. Oct. 3, 2014) (construing *pro se* plaintiff's amended complaint as a supplement where the "original complaint contain[ed] more factual details underlying his claims"), *report and recommendation adopted*, 2014 U.S. Dist. LEXIS 175424 (W.D. Tenn. Dec. 19, 2014).

That is likely what occurred here. While certain components of Essak's amended complaint indicate it was intended to be operative (*see, e.g.*, ECF No. 12, PageID.156 (certifying that the amended complaint complies with all procedural rules governing complaints)), there are also reasons to question if Essak meant to supersede her initial complaint. Most notably, the "statement of facts" within the amended complaint contains no facts at all—it only lists additional provisions of law, whereas the statement of facts in Essak's initial complaint was lengthy and contained far more (albeit conclusory) factual allegations. (*Compare* ECF No. 1 PageID.9–17 *with* ECF No. 12, PageID.141–147.)

In line with these other cases, and the Sixth Circuit's instruction that *pro se* complaints are afforded liberal construction, this Court will consider Essak's initial complaint (ECF No.1) and amended complaint (ECF No. 12) together to conduct a fulsome screening under 28 U.S.C. § 1915.

## B.

To start, it appears that the Court lacks jurisdiction over at least some of Essak's claims. Although Essak has properly pled federal question jurisdiction (ECF No. 1, PageID.7), there are a number of rules that narrow this Court's jurisdiction.

5

First is the so-called "domestic relations exception," which exempts from federal diversity jurisdiction "cases involving the issuance of a divorce, alimony, or child custody decree." *Chevalier v. Estate of Barnhart*, 803 F.3d 789, 794 (6th Cir. 2015) (quoting *Ankenbrandt v. Richards*, 504 U.S. 689, 704 (1992)); *see also Danforth v. Celebrezze*, 76 Fed. Appx. 615, 616 (6th Cir. 2003) ("Generally, federal courts have no jurisdiction over domestic relations matters."). This exception also applies in federal question cases "where the action is a mere pretense and the suit is actually concerned with domestic relations issues." *See Danforth,* 76 Fed. Appx. at 616. So to the extent that Essak primarily seeks to modify the decrees rendered in her divorce or custody proceedings (*see* ECF No. 1, PageID.9–12), this Court lacks that authority.

Second, under the *Rooker-Feldman* doctrine, the lower federal courts, like this one, lack jurisdiction to review the validity of state-court judgments. *See Hood v. Keller*, 341 F.3d 593, 597 (6th Cir. 2003) ("The purpose of the doctrine is to prevent 'a party losing in state court . . . from seeking what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights.'" (omission in original)). This Court "do[es] not possess direct oversight powers over Michigan's courts." *Adkins v. Adkins*, No. 15-13823, 2015 WL 6736187, at *2 (E.D. Mich. Nov. 4, 2015) (citing *In re Cook*, 551 F. 3d 542, 548 (6th Cir. 2009)). If Essak seeks review of the various state court judgments against her (*see, e.g.*, ECF No. 1, PageID.49 (asking this Court to "[v]acate all judgments, sanctions, liens, and adverse

6

orders against Plaintiff that were obtained through fraud on the court, perjury, or procedural misconduct")), she may only do so in Michigan state courts—not here.

## C.

To the extent any of Essak's claims survive these jurisdictional defects, and because she is challenging more than the state court orders themselves, the Court next considers whether any of her claims would alternatively be barred by immunity doctrines. It appears so. First, at least three of the defendants Essak seeks relief against are state court judges (Judges T. David Law, Mary Ellen Brennan, Kwame Rowe) who are entitled to judicial immunity for the acts Essak describes (as best understood by the Court).[1]

It is "a well-entrenched principle in our system of jurisprudence" that judges are absolutely immune from civil suits seeking money damages that arise from acts performed within their jurisdiction. *Barnes v. Winchell*, 105 F.3d 1111, 1115 (6th Cir. 1997); *see also DePiero v. City of Macedonia*, 180 F.3d 770, 783 (6th Cir. 1999) ("Judges are generally absolutely immune from civil suits for money damages, including § 1983 suits."). "A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the 'clear absence of all jurisdiction.'" *Stump v. Sparkman*, 435 U.S. 349, 356–57 (1978).

---

[1] Essak named two additional state court Judges (David M. Cohen and Jeffrey Matis) in her amended complaint (ECF No. 12, PageID.132–133), but does not describe, in any way, the nature of her complaints against them.

7

While Essak describes judicial conduct she finds disagreeable, her claims against each defendant judge seemingly arise from protected acts performed well within their jurisdiction. (*See* ECF No. 1, Page ID.47–49 (alleging that Judge Brennan demonstrated animus toward her while "presiding" over her divorce case and a breach of contract action); *id.* (describing Judge Rowe's conduct in a civil suit Essak initiated and subsequent contempt proceedings); *id.* PageID.42–44, 49 (alleging that Judge Law imposed unfair and excessive penalties against her in a criminal misdemeanor proceeding, eviction hazard proceeding, and a "municipal enforcement matter").) To the extent Essak seeks money damages from these judges based on acts done in their official capacities, these claims, too, are barred. (*See, e.g.*, *id.* at PageID.50 (seeking compensatory and punitive damages from Judge Law for his allegedly unconstitutional rulings).)

Second, at least some of Essak's claims against state court clerk Khareem Jamal Slaton fail for similar reasons (*See, e.g.*, ECF No. 1, PageID.38; *see also,* ECF No. 12, PageID.139.) The Sixth Circuit has held that court clerks are entitled to partial judicial immunity when performing "quasi-judicial" functions, like deciding whether they will process or reject filing documents. *See Garrison v. Wilson*, No. 24-1198, 2025 U.S. App. LEXIS 870, at *5–7 (6th Cir. Jan. 14, 2025). As such, Essak's claims that Slaton discriminated against her by his alleged failure to "accept [her] filings" are also barred. (ECF No. 1, PageID.38.)

Third, Essak's sweeping claims of constitutional violations are apparently levied against both private and state actors. (*See, e.g., id.* at PageID.19–20 (bringing

8

a § 1983 claim against private attorney Scott Neumann); *see also id.* at PageID.20 (asserting a First Amendment retaliation claim against her former divorce attorney, Melissa Pearce).) But private individuals can only be held liable for constitutional violations in "discrete" circumstances—none of which are present here. *See Bowman v. Merkley*, No. 23-5638, 2023 WL 9186333, at *1 (6th Cir. Dec. 26, 2023); *see also Revis v. Meldrum*, 489 F.3d 273, 289 (6th Cir. 2007) ("[M]ost rights secured by the Constitution are protected only against infringement by governments." (quoting *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 156 (1978))). Setting aside her conclusory and factually unsupported claims of a "conspiracy" between numerous state and private actors, Essak has said nothing that would deem the private defendants' conduct "fairly attributable" to the state. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982). As such, Essak's various constitutional claims against private lawyers, insurance adjusters, and other persons who were otherwise not acting on behalf of the state, are improper.

### D.

Essak's complaint is so sprawling in nature it is hard to parse precisely which claims are levied against which defendants and what relief she seeks as to each. (*See, e.g.*, ECF No. 1, PageID.38 (naming "all defendants acting under color of law" as the Defendants to her equal protection claim).) So to the extent any of her claims survive jurisdictional and immunity challenges noted above, the Court next considers the content of her claims. Dismissal of a case is also appropriate where the Court deems the complaint factually frivolous. *Hill*, 630 F.3d at 471. A claim is frivolous where it

9

relies on factual contentions that are "clearly baseless," *id.*, "where it lacks an arguable basis either in law or in fact," *Neitzke,* 490 U.S. at 325, or where the allegations are "fantastic" or "delusional" *id.* at 327–28. This applies here. Essak, by alleging that multiple judges, attorneys, law enforcement personnel, insurance companies, and various private individuals all conspired to discriminate against her on virtually every protected characteristic, and in virtually every way, has raised claims that are factually frivolous.[2]

First, Essak alleges, in a conclusory manner, that the Oakland County judge who presided over her "contentious divorce proceedings" discriminated against her because of her Palestinian identity. (ECF No. 1, PageID.9.) That judge also allegedly violated Essak's right to equal protection by "entertaining . . . accusations" made by her ex-husband's attorney that were "baseless." (*Id.* at PageID.10.) And, says Essak, that judge violated her "due process rights" by allowing her ex-husband's baseless allegations to "influence proceedings without any evidentiary hearing or protective review." (*Id.* at PageID.10–11.)

And that is not all that went wrong in her divorce proceedings, according to Essak. Essak also claims her ex-husband's attorney violated her "Fourteenth Amendment rights to due process and family integrity" by defaming her with untrue

---

[2] It should also be noted that several of Essak's complaints also appear to be without any legal basis. For example, she alleges an equal protection violation based, in part, on officers "refusing to take [her] police reports." (ECF No. 1, PageID.38.) But there is no established constitutional right to mandate a police report. *See, e.g.*, *Hailey v. Logan Cnty. Det. Ctr.*, 24-P60, 2024 WL 1904337, at *2 (W.D. Ky., Apr. 30, 2024) (citing *Deshaney v. Winnebago Cnty. Dept. of Soc. Servs.*, 489 U.S. 189, 196 (1989)).

allegations. (*Id.* at PageID.10.) And her own attorney in the case "breached her fiduciary and ethical obligations by sharing confidential client information regarding [Essak's] financial status and a potential franchise business opportunity." (*Id.*)

Nor did the supposed conspiracy end there. Next, Essak raises a host of complaints arising from a dispute with Sosnowski related to a failed construction project she hired him to complete at her home. (*See id.* at PageID.12.) Essak says that Sosnowski not only failed to complete the project, but also stole tools from her (*id.* at Page.ID.26), left her home in an "unsafe and hazardous condition," (*id.* at PageID.14), and made unwanted sexual advances toward her, creating an "uncomfortable working environment" at her home (*id.* at PageID.13.) This, says Essak, constituted "fraud, breach of contract, trespass to chattels, conversion, coercion, and intentional infliction of emotional distress." (*Id.* at PageID.14.)

Further still, Essak claims the prejudice and discrimination that supposedly began in her divorce proceedings bled into her later property dispute with Sosnowski when they broke up. (*See, e.g.*, *id.* at PageID.40.) Here, too, Essak alleges a laundry list of breaches of law, including, but certainly not limited to: "violation of local burn ordinances" (*id.* at PageID.15), "malicious destruction" of property (*id.*), witness tampering and perjury (*id.* at PageID.17),[3] "civil conspiracy" (*id.* at PageID.16), and

---

[3] Of note, Essak alleges witness tampering and perjury under various provisions of federal criminal law. (*See* ECF No. 1, PageID.44 (citing 18 U.S.C § 1512 (federal crime for witness tampering) and 18 U.S.C. § 1503 (federal crime of influencing an officer or juror).) But Essak, as a private citizen, cannot bring criminal charges against other private citizens. *See, e.g.*, 28 U.S.C. § 547; *see also Am. Postal Workers Union v. Indep. Postal Sys.*, 481 F.2d 90, 92 (6th Cir. 1973) ("[T]he general rule is that a private right of action is not maintainable under a criminal statute.").

11

"retaliation under 42 U.S.C. § 1983 and § 1985, when viewed in concert with [Sosnowski's] subsequent alignment with other Defendants to discredit and silence" her (*id.*).

And even beyond these three central incidents that compose much of Essak's complaint (the divorce case, the failed construction contract, and the hot tub dispute), she also references various other court proceedings that were supposedly part of a "broader scheme to injure [her] . . . [that] were coordinated among attorneys, public officials, insurers, and law enforcement personnel." (*Id.* at PageID.45.) These include another unspecified breach of contract suit (*id.* at PageID.47), a misdemeanor prosecution before Judge Law (*id.* at PageID.41), a "defamation and slander complaint" filed against her by Sosnowski (*id.* at PageID.47), an "eviction hazard proceeding" (*id.* at PageID.41–42), and even a municipal code enforcement complaint brought against her by Highland Township (*id.* at PageID.41, 43.)

Perhaps most implausibly, Essak conceives of these various alleged wrongs as all related, insisting that her injuries arise from a "cumulative retaliatory campaign, involving threats, public character assassination, legal sabotage, and interference with court access . . . to punish [her] for speaking, filing, and refusing to drop her claims . . . and [to] discredit her in both legal and personal arenas." (*Id.* at PageID.22.) According to Essak, "[t]hese acts, motivated by animus, favoritism, or *coordination among officials and private actors*, constitute a violation of the Equal Protection clause and *demonstrate a conspiracy* . . . to deprive [her] of her equal protection rights." (*Id.* at PageID.24 (emphasis added).)

But she provides no explanation as to *how* these parties conspired and coordinated against her. She merely asserts that it happened (*See, e.g.*, *id.* at Page.ID.44 ("Defendants, through their coordinated and ongoing conduct spanning from 2022 to 2025, engaged in a pattern of racketeering activity.").) Nor does she allege facts that would allow the Court to infer defendants "targeted her" intentionally or for prohibited reasons. She only claims that they did. *See, e.g.*, *id.* at PageID.24 ("Plaintiff was intentionally treated differently from others similarly situated with no rational basis").)

Essak's claims, arising from an alleged coordinated conspiracy to harm her, are so numerous and disjointed they are hard to follow and even harder to find plausible. The Court thus finds them factually frivolous. *See Cassaday*, 2025 U.S. App. LEXIS 16682, at *4 ("[Plaintiff] cited numerous state and federal laws and generally asserted that the defendants harmed him, but he asserted no concrete facts from which it could be inferred that the defendants were liable for any unlawful conduct. [His] complaint was properly dismissed for failure to state a claim on which relief may be granted and frivolity." (citation omitted)); *see also Rodriguez v. City of Parma Mun. Ct.*, No. 25-1367, 2025 U.S. Dist. LEXIS 189846, at *1 (N.D. Ohio Sept. 25, 2025) (dismissing complaint as frivolous where "Plaintiff name[d] as Defendants all those who appear to have had some involvement in cases against him in the Parma Municipal Court, 'for a systematic, coordinated, and deliberate violation of his civil, constitutional, and human rights,'" and where "his complaint (with nearly 250 pages of exhibits attached) consist[ed] entirely of unclear and conclusory allegations and

13

grievances apparently relating to charges and municipal court proceedings against him").

## III.

Accordingly, Essak's application to proceed *in forma pauperis* (ECF No. 5) is GRANTED and her complaint (ECF No. 1) is DISMISSED.

SO ORDERED.

Dated: October 7, 2025

s/Laurie J. Michelson<br>
LAURIE J. MICHELSON<br>
UNITED STATES DISTRICT JUDGE